**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 1:26-cv-22557-GAYLES**

SAMUEL CRUZ GARCIA,

      **Petitioner**,

v.

MARKWAYE MULLIN,  Secretary of the
United States Department of Homeland
Security, et al.,

      **Respondents.**

_____/

**ORDER**

    **THIS CAUSE** comes before the Court on Petitioner Samuel Cruz Garcia's Petition for Writ of Habeas Corpus (the "Petition"). [ECF No. 1]. Petitioner challenges his detention at the Krome North Service Processing Center without being afforded an individualized bond determination. *See generally id*. In accordance with 28 U.S.C. § 2243, the Court issued an Order directing Respondents[1] to show cause why the Petition should not be granted. [ECF No. 4]. Respondents filed a Response in Opposition to the Petition, [ECF No. 5], and Petitioner filed a Reply, [ECF No. 6].  The Court has considered the record, the parties' written submissions, and applicable law. For the following reasons, the Petition is **GRANTED in part**.

---

[1] The Petition names Markwayne Mullin, Secretary of the United States Department of Homeland Security; Garrett J. Ripa, Miami Field Office Director of Enforcement and Removal Operations; United States Immigration and Customs Enforcement; United States Department of Homeland Security; Executive Office for Immigration Review ("EOIR"); Pamela Bondi, former Attorney General of the United States; and Warden of the Krome North Service Processing Center. A writ of habeas corpus must "be directed to the person having custody of the person detained." 28 U.S.C. § 2243. And in "challenges to present physical confinement," the Supreme Court has made clear that "the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." *Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004); *see also id.* at 447 ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement."). Accordingly, Warden of the Krome North Service Processing Center is the only proper Respondent here. The other Respondents shall be dismissed. *See Jackson v. Chatman*, 589 F. App'x 490, 491 n.1

I.        BACKGROUND

A.        Petitioner's Immigration History in the United States

On February 25, 2022, Petitioner, a Cuban national, entered the United States without inspection and was apprehended by Customs and Border Protection ("CBP") upon his entry at the southern border.[ECF No. 5, Resp. in Opp. at 1]. CBP determined that Petitioner was illegally in the United States and took him into custody. *Id.*

On March 3, 2022, the United States Department of Homeland Security ("DHS") issued a Notice to Appear (the "Notice") and initiated removal proceedings against Petitioner under Section 240 of the Immigration and Nationality Act ("INA"). [ECF No. 5–1, Notice to Appear, at 1]. The Notice alleges that Petitioner "arrived in the United States at or near Del Rio, TX, on or about February 25, 2022," and that Petitioner was "not then admitted or paroled after inspection by an immigration officer." *Id.* Petitioner was ordered to appear before an immigration judge in Miami, Florida, on October 3, 2024, " to show why [he] should not be removed from the United States." *Id.* A few weeks later, on March 29, 2022, Petitioner was released from Immigration and Customs Enforcement ("ICE") custody on an order of recognizance. [ECF No. 5, Resp. in Opp. at 2].

On December 18, 2025, an Immigration Judge dismissed the removal proceedings initiated against Petitioner by DHS under C.F.R. 1239.2(c). [ECF No. 5–4, Order on Motion to Dismiss]. On the same day, during targeted operations in Miami, ICE encountered and arrested Petitioner. [ECF No. 5, Resp. in Opp. at 2]; [ECF No. 5–2, Form I-213, at 2]. Petitioner was then placed in expedited removal proceedings. [ECF No. 5, Resp. in Opp. at 2]. And an Expedited Order of Removal was issued against Petitioner. *Id.*; [ECF No. 5–6, Notice and Order of Expedited Removal].

On March 12, 2026, following Petitioner's request for a custody redetermination, the Immigration Court issued an order, stating that no actions were taken on Petitioner's request. [ECF No. 5–7, Order of the Immigration Judge]. Then, on April 8, 2026, finding that Petitioner's testimony was not credible, United States Citizenship and Immigration Services ("USCIS") determined that Petitioner did not have a credible fear of prosecution or torture pursuant to 8 C.F.R. 208.30. [ECF No. 5–8, Form I-869, at 1–2]. Petitioner was therefore ordered to be removed from the United States. *Id.* at 2. Petitioner requested an Immigration Judge review USCIS' decision. *Id.* And on April 15, 2026, an Immigration Judge affirmed USCIS' decision and returned the case to DHS for Petitioner's removal from the United States. [ECF No. 5–10, Order of the Immigration Judge, at 2].

To date, Petitioner remains in ICE custody at the Krome North Service Processing Center pending his removal from the United States. [ECF No. 5, Resp. in Opp. at 3].

**B.      Petitioner's Habeas Petition**

On April 13, 2026, Petitioner filed his Petition for Writ of Habeas Corpus. [ECF No. 1]. Petitioner alleges five counts: Violation of Procedural Due Process (Fifth Amendment) (Count I); Detention Without Statutory Authority (Count II); Substantive Due Process – Arbitrary Civil Detention (Count III); Removal is Not Reasonably Foreseeable (Count IV); and Government-Created Procedural Limo (Count V). *Id.* ¶¶ 29–57. On April 24, 2026, Respondents filed a Response in Opposition to the Petition, arguing that Petitioner is not entitled to an individualized bond hearing because Petitioner is detained under 8 U.S.C. § 1225(b)(2), not § 1226(a). [ECF No. 5, at 3–11].

**II.      LEGAL STANDARD**

District courts may grant writs of habeas corpus if a person is "in custody in violation of

3

the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(a), (c)(3). Indeed, "[h]abeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). In *Zadvydas v. Davis*, the Supreme Court reaffirmed that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to" immigration detention. 533 U.S. 678, 688 (2001). And courts in this District have held that this Court has jurisdiction over challenges involving whether a petitioner is detained subject to § 1225(b)(2) or to § 1226(a). *See, e.g.*, *Similien v. Warden, Federal Det. Center, Miami*, No. 26-CV-21739, 2026 WL 900078, at *2 (S.D. Fla. Apr. 2, 2026); *Chamsadine v. Assistant Field Director Warden*, No. 26-21487-CV, 2026 WL 746400, at *1 (S.D. Fla. Mar. 17, 2026).

Section 1225(b) governs the inspection of noncitizen applicants for admission. *See* 8 U.S.C. § 1225(b). An "applicant for admission" is an "alien present in the United States who has not been admitted or who arrives in the United States." *See id.* § 1225(a)(1). Detention for noncitizen applicants for admission under § 1225(b)(2) is mandatory. *See Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) (noting § 1225(b)(2) "mandate[s] detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin"). For that reason, a noncitizen applicant for admission detained under § 1225(b)(2) is ineligible for bond. *See, e.g.*, *Carvajal Bautista v. U.S. Immigr. & Customs Enf't*, No. 1:26-CV-22191, 2026 WL 925590, at *2 (S.D. Fla. Apr. 6, 2026).

Section 1226, on the other hand, "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *See Jennings*, 583 U.S. at 289 (emphasis added). "Section 1226(a)'s default rule permits the Attorney General to issue warrants for the arrest and detention of these aliens pending the outcome of their removal proceedings." *Id.* at 281; *see also* 28 U.S.C. § 1226(a) ("On a warrant issued by the Attorney

4

General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."). "The Attorney General 'may release' these aliens on bond" unless they "fall[] into one of the enumerated categories" in § 1226(c) "involving criminal offenses and terrorist activities." *See Jennings*, 583 U.S. at 281 (quoting § 1226(a)(2)). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Id.* at 306; *see also* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1).

Put simply, § 1226(a) "establishes a discretionary detention framework," which is "unlike the mandatory detention framework of § 1225(b)(2)." *See Carvajal Bautista*, 2026 WL 925590, at *2 (quotation marks omitted); *Aguilar Merino v. Ripa*, No. 25-23845-CIV, 2025 WL 2941609, at *3 (S.D. Fla. Oct. 15, 2025). Congress explained the basis for these different detention frameworks when it determined in 1996 that "noncitizens already residing in the U.S." have "more substantial due process rights" than "noncitizens recently arriving." *See Aguilar Merino*, 2025 WL 2941609, at *3. In the thirty years since then, federal courts and agencies have uniformly held that § 1226(a) governs the detention of noncitizen residents, while § 1225(b)(2) applies to noncitizens arriving at an entry point. *See id.*

Indeed, even ICE's own agency, DHS, interpreted the statutes this way until a July 2025 policy change. *See id.* Pursuant to the DHS's new policy, however, ICE has been instructed to treat noncitizen residents "in the same manner that 'arriving aliens' have historically been treated," which means mandatory detention and no eligibility for a bond hearing. *See id.* (quoting *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA Doc. No. 25071607 (July 8, 2025)); *Carvajal Bautista*, 2026 WL 925590, at *2. "Following this interpretation, the BIA held" that an Immigration Judge "had no authority to provide a bond hearing to a noncitizen" who "had been living in the United States for years without admission or

5

parole" because he "is an applicant for admission under § 1225(b)(2)" and "subject to mandatory detention." *Carvajal Bautista*, 2026 WL 925590, at *2; *see also Yajure Hurtado*, 29 I. & N. Dec. at 228 (adopting DHS's new interpretation).

But "District Courts have overwhelmingly rejected the BIA's interpretation." *Carvajal Bautista*, 2026 WL 925590, at *2. That includes courts in this District, many of which have concluded that DHS's abrupt shift in interpretation "runs afoul of the statutes' legislative history, plain meaning, and interpretation by courts in" six Circuits over the last three decades. *See, e.g.*, *Aguilar Merino*, 2025 WL 2941609, at *3. Those courts have instead adhered to the interpretation supported by a "plain reading" of § 1225(b)(2) and § 1226(a), *see id.*, which is that the detention of noncitizens encountered when they are already living in the United States "is governed by § 1226(a) and not § 1252(b)(2)," *see Carvajal Bautista*, 2026 WL 925590, at *3. *But see Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 506–08 (5th Cir. 2026) (adopting DHS's new interpretation); *Avila v. Bondi*, 170 F.4th 1128, 1137–38 (8th Cir. 2026) (same).

## III.    ANALYSIS

The core disagreement between Petitioner and Respondent is whether Petitioner is detained under § 1225(b)(2), and is thus ineligible for bond, or under § 1226(a), which allows for release on bond. This is a hotly contested question that is currently dividing courts throughout the country. This Court, however, has already answered it: noncitizens who have "been living in the United States" for years before being detained are "governed by § 1226(a) and not § 1252(b)(2)." *See, e.g.*, *Carvajal Bautista*, 2026 WL 925590, at *3. Those noncitizens are "therefore entitled to a bond hearing." *See id.* The Second Circuit agrees, recently holding that "Section 1225(b)(2)(A) does not apply to [] noncitizens, who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or

shortly thereafter." *Cunha v. Freden¸* No. 25-3141-pr, 2026 WL 1146044, at *2 (2d Cir. Apr. 28, 2026) (noting that "even if the government's newfound interpretation of Section 1225(b)(2)(A) were plausible—and it is not—we would nonetheless reject it based on our obligation to construe these statutes in a manner that would avoid the serious constitutional questions attendant to what would be the broadest mass-detention-without-bond mandate in our Nation's history for millions of noncitizens.").

The Court sees no reason to depart from that holding here.[2] Petitioner has lived in the United States since 2022, after he was encountered by CBP in Del Rio, Texas, not at the border or the port. That makes Petitioner a noncitizen resident, not an arriving alien or an applicant for admission. As a result, the Petition is governed by § 1226(a) not § 1225(b)(2), and Petitioner is entitled to a bond hearing under § 1226(a).

Accordingly, the Petition's request for an individualized bond hearing is granted. The Court declines to reach the merits of Petitioner's other claims as the Court is granting his request for a bond hearing. *See, e.g.*, *Nguyen*, 2025 WL 3451649, at *4 (declining to reach the merits of the petitioner's due process claim because it granted the requested relief in other counts but allowing the petitioner to reassert its due process claim if the respondents do not provide a bond hearing). If Respondents do not comply with this Order by providing Petitioner a bond hearing under § 1226(a), Petitioner may renew his claims.

## IV.     CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED:**

---

[2] The Court acknowledges the recent decisions by the Fifth and Eighth Circuits that agreed with Respondent's position. *See Buenrostro-Mendez*, 166 F.4th at 506–08; *Avila*, 170 F.4th at 1137–38. Of course, those decisions are "not binding here, and" they "contradict[] the vast majority of district court opinions addressing the issue." *Lobovillalobos v. Hardin*, No. 2:26-cv-00446, 2026 WL 621380, at *2 n.1 (M.D. Fla. Mar. 5, 2026); *see also Buenrostro-Mendez*, 166 F.4th at 509 (Douglas, J., dissenting) (criticizing the decision as "totally unsupported"). Therefore, they do not persuade this Court. This issue is on appeal before the Eleventh Circuit in *Hernandez Alvarez v. Warden, Federal Det. Ctr Miami, et al.*, No. 25-14065 (11th Cir.) and *Cerro Perez v. Assistant Field Dir., et al.*, No. 25-14075 (11th Cir.).

(1)     Petitioner Samuel Cruz Garcia's Petition for Writ of Habeas Corpus, [ECF No. 1], is **GRANTED in part**. The Court finds that Petitioner's detention falls under 8 U.S.C. § 1226(a).

(2)     Respondent shall afford Petitioner an individualized bond hearing consistent with 8 U.S.C. § 1226(a) on or before **May 13, 2026** or otherwise release Petitioner.

(3)     On or before **May 23, 2026**, Respondent shall file a Status Report informing the Court of whether Petitioner was given a bond hearing, the outcome of Petitioner's bond hearing, and the status of matters relevant to the Petition.

(4)     All Respondents—aside from Warden of the Krome North Service Processing Center—are dismissed from this action. *See* 28 U.S.C. § 2243; *Rumsfeld*, 542 U.S. at 439, 447; *Jackson*, 589 F. App'x at 491 n.1.

(5)     This case is **CLOSED** for administrative purposes.

(6)     The Court retains jurisdiction to address matters that may arise with respect to the Petition, and either party may move to reopen the case should any additional relief be sought relating to the Petition or this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 30th day of April, 2026.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE